**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | ) | Case No. 25-80185 (SGJ) |
| Debtors. | ) | (Jointly Administered) |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

## INTRODUCTION

Genesis Healthcare, Inc. ("Genesis") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), are filing their respective Schedules of Assets and Liabilities (each, a "Schedule" and, collectively, the "Schedules") and Statements of Financial Affairs (each, a "Statement" and, collectively, the "Statements") with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These global notes and statement of limitations, methodology, and disclaimers regarding the Debtors' Schedules and Statements (collectively, the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to particular Schedules and Statements (the "Specific Notes" and, together with the Global Notes, the "Notes"). These Global Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management team prepared the Schedules and Statements with the assistance of their advisors, consultants, and professionals and have relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors, consultants, and professionals. Given the scale of the Debtors' businesses, the Debtors' management, including the Debtors' Co-Chief Restructuring Officer, Russell Perry (who has executed the Schedules and

[1] The last four digits of Genesis Healthcare, Inc.'s federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

Statements of each of the Debtors) has not (and practically could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, the receipt or discovery of subsequent information may result in material changes to the Schedules and Statements, and inadvertent errors, omissions, or inaccuracies may exist in the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of the applicable Debtor or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to the Chapter 11 Cases, including, but not limited to, liability for any claims, any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or re-characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements except as may be required by applicable law.

**The Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors or their affiliates.**

1. **Description of the Chapter 11 Cases**. Beginning on July 9, 2025 (the "Petition Date"), each Debtor commenced a voluntary case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On July 11, 2025, the Bankruptcy Court entered an order authorizing the joint administration of the cases pursuant to Bankruptcy Rule 1015(b). *See* Docket No. 51. On July 30, 2025, the Office of the United States Trustee for Region 6 (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee"). *See Notice of Appointment of the Official Unsecured Creditors' Committee* [Docket No. 250] as was later amended by Docket Nos. 262, 593, and 699. To date, no trustee or examiner has been appointed in the Chapter 11 Cases.

2. **Basis of Presentation**. For financial reporting purposes, the Debtors historically have prepared consolidated financial statements, which include financial information for the Debtors and certain non-debtor affiliates. The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP") in the United States, nor are they intended to be fully reconciled with the financial statements of each Debtor.

The Debtors used their best efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the applicable Debtor entity. However, because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes, rather than reporting by individual legal entity, it is possible that not all assets, liabilities, or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements. Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Given, among other things, the uncertainty surrounding the amount and nature of certain assets and liabilities, a Debtor may report more assets than liabilities. Such report shall not constitute an admission that such Debtor was solvent on the Petition Date or at any time before or after the Petition Date. Likewise, a Debtor reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent on the Petition Date or any time prior to or after the Petition Date.

The Schedules and Statements for Genesis CT XCL Operations LLC (Case No. 25-80355) include amounts for the following inactive entities which were consolidated into Genesis CT XCL Operations LLC prior to the Petition Date: 1400 Woodland Avenue Operations LLC; 319 East Dunstable Road Operations LLC; Genesis Diamond Operations LLC; Genesis Prime Operations LLC; SunBridge Clipper Home of Portsmouth, LLC; SunBridge Glenville Health Care, LLC; SunBridge Mountain Care Management, LLC; and Willow Creek Healthcare Center, LLC.

The Schedules and Statements for Genesis OMG Operations LLC (Case No. 25-80402) include amounts for the following inactive entities which were consolidated into Genesis OMG Operations LLC prior to the Petition Date: 15810 South 42nd Street Operations LLC; 1660 Hospital Drive Operations LLC; 215 West Brown Road Operations LLC; 255 West Brown Road Operations LLC; 9940 West Union Hills Drive Operations LLC; GEN BQ OMG Master Tenant LLC; SunBridge Circleville Health Care LLC; SunBridge Marion Health Care, LLC; Wakefield Healthcare, LLC; Westfield Healthcare, LLC; and Peak Medical Colorado No. 2, LLC.

The Schedules and Statements for GHC TX Operations LLC (Case No. 25-80184) include amounts for the following inactive entities which were consolidated into

GHC TX Operations LLC prior to the Petition Date: 1 Emerson Drive North Operations LLC; 1 Emerson Drive South Operations LLC; 1 Magnolia Drive Operations LLC; 100 Edella Road Operations LLC; 100 St. Claire Drive Operations LLC; 1000 Orwigsburg Manor Drive Operations LLC; 1000 Schuylkill Manor Road Operations LLC; 101 Mills Place Operations LLC; 1080 Silver Lake Boulevard Operations LLC; 1113 North Easton Road Operations LLC; 115 Sunset Road Operations LLC; 120 Murray Street Operations LLC; 120 Murray Street Property LLC; 12080 Bellaire Way Operations LLC; 1240 Pinebrook Road, LLC; 1351 Old Freehold Road Operations LLC; 140 Prescott Street Operations LLC; 1419 Route 9 North Operations LLC; 1501 SE 24th Road, LLC; 1515 Lamberts Mill Road Operations LLC; 1526 Lombard Street SNF Operations II LLC; 1526 Lombard Street SNF Operations LLC; 1718 Spring Creek Road Operations LLC; 1801 Turnpike Street Operations LLC; 1801 Wentworth Road Operations LLC; 184 Bethlehem Pike Operations LLC; 1980 Sunset Point Road, LLC; 200 Marter Avenue Operations LLC; 22 South Street Operations LLC; 239 Pleasant Street Operations LLC; 2600 Highlands Boulevard, North, LLC; 2601 Evesham Road Operations LLC; 290 South Monaco Parkway Operations LLC; 3 Park Drive Operations LLC; 30 Princeton Boulevard Operations LLC; 300 Pearl Street Property LLC; 3000 Balfour Circle Operations LLC; 3001 Evesham Road Operations LLC; 329 Exempla Circle Operations II LLC; 336 South West End Avenue Operations LLC; 3485 Davisville Road Operations LLC; 35 Milkshake Lane Operations LLC; 350 Haws Lane Operations LLC; 3809 Bayshore Road Operations LLC; 3865 Tampa Road, LLC; 4 Hazel Avenue Operations LLC; 40 Parkhurst Road Operations LLC; 400 Groton Road Operations LLC; 400 Vision Drive Operations LLC; 440 North River Street Operations LLC; 455 Brayton Avenue Operations LLC; 464 Main Street Operations LLC; 4901 North Main Street Operations LLC; 4927 Voorhees Road, LLC; 515 Brightfield Road Operations LLC; 536 Ridge Road Operations LLC; 549 Baltimore Pike Operations LLC; 55 Cooper Street Operations LLC; 55 Kondracki Lane Operations LLC; 555 Kondracki Lane Property, LLC; 5501 Perkiomen Avenue Operations LLC; 59 Harrington Court Operations LLC; 6000 Bellona Avenue Operations LLC; 61 Cooper Street Operations LLC; 610 Townbank Road Operations LLC; 65 Cooper Street Operations LLC; 650 Edison Avenue Operations LLC; 70 Gill Avenue Operations LLC; 72 Salmon Brook Drive Operations LLC; 7232 German Hill Road Operations LLC; 7395 W. Eastman Place Operations II LLC; 740 Oak Hill Road Operations LLC; 7520 Surratts Road Operations LLC; 800 West Miner Street Operations LLC; 8005 U.S. Highway 60 West Operations LLC; 845 Paddock Avenue Operations LLC; 850 Paper Mill Road Operations LLC; 8710 Emge Road Operations LLC; 8720 Emge Road Operations LLC; 89 Morton Street Operations LLC; 899 Cecil Avenue Operations LLC; 9109 Liberty Road Operations LLC; Bradford Square Nursing, LLC; Carehouse Healthcare Center, LLC; Crestview Nursing, LLC; Elmcrest Care Center, LLC; Florida Holdings II, LLC; Florida Holdings III, LLC; Forty Eight Nichols Street Operations LLC; Forty Six Nichols Street Property LLC; Genesis Health Ventures of New Garden, LLC; Genesis Hospitality Services LLC; Genesis IP LLC; Genesis Staffing Services LLC; Grant Manor LLC; Harborside Connecticut Limited Partnership; Harborside

Massachusetts Limited Partnership; Harborside of Dayton Limited Partnership; HBR Bowling Green, LLC; HBR Brownsville, LLC; HBR Campbell Lane, LLC; HBR Danbury, LLC; HBR Elizabethtown, LLC; HBR Lewisport, LLC; HBR Madisonville, LLC; HBR Owensboro, LLC; HBR Woodburn, LLC; Huntington Place Limited Partnership; Klondike Manor LLC; Lincoln Highway Operations LLC; Massachusetts Holdings I, LLC; Peak Medical Colorado No. 3, LLC; Peak Medical Farmington, LLC; Peak Medical Gallup, LLC; Peak Medical of Colorado, LLC; Peninsula Regional/Genesis ElderCare, LLC; Post-Acute Support Services, LLC; Regency Nursing, LLC; Rejuvenate Consulting Services LLC; Rejuvenate Group LLC; Riverside Retirement Limited Partnership; SR-73 AND LAKESIDE AVENUE OPERATIONS LLC; SunBridge Harbor View Rehabilitation Center, LLC; and Woodspoint LLC.

3. **Reporting Date**. The reported assets and liabilities in Schedules A, B, and E/F, with the exception of estimated cash balances, reflect the Debtors' assets and liabilities as of June 30, 2025 (the "Reporting Date"). Estimated cash balances presented in Schedule A reflect bank balances as of the Petition Date. Liabilities presented in Schedule D are as of the Petition Date.

4. **Current Net Book Values**. Other than estimated bank cash balances, and unless otherwise noted, the assets and liabilities of each Debtor are listed on the basis of the net book value of the asset or liability in the respective Debtor's accounting books and records.

5. **Confidentiality**. Schedule E/F includes certain unsecured claims against the Debtors including, without limitation, certain claims of former employees as well as certain unsecured claims of current and/or former patients and residents. Due to confidentiality concerns, and as authorized by certain orders entered by the Bankruptcy Court, the Debtors have removed the addresses of the employee claimants and the names and addresses of the patient and resident claimants listed on Schedule E/F.

6. **Consolidated Entity Accounts Payable and Disbursement Systems**. As described in the Cash Management Motion,[2] the Debtors utilize an integrated, centralized cash management system in the ordinary course of business to collect, consolidate, and disburse funds generated by their operations. The Debtors concentrate cash assets into a central account to more effectively manage their businesses and coordinate the payment of outstanding obligations.

---

[2] The "Cash Management Motion" means the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Existing Cash Management System, (B) Maintain Existing Bank Accounts and Business Forms and Honor Certain Prepetition Obligations Related to the Use Thereof, (C) Maintain Purchasing Card Programs and Honor Prepetition Obligations Related Thereto, and (D) Continue to Perform Intercompany Transactions; (II) Extending the Time for The Debtors to Comply with 11 U.S.C. § 345(b) Deposit and Investment Requirements; and (III) Granting Related Relief* [Docket No. 11].

In the ordinary course of business, the Debtors engage in intercompany transactions (the "Intercompany Transactions") with one another, which result in intercompany receivables and payables (the "Intercompany Claims"). Intercompany Transactions are settled by either book entry or by the actual transfer of cash. The Debtors track all Intercompany Transactions in their accounting system, which may be traced and accounted for as needed. Since the Petition Date, the Debtors continue to settle Intercompany Claims in accordance with the procedures outlined in the Cash Management Motion.

7. **Accuracy**. Although the Debtors have made good faith reasonable efforts to file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder. Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared. The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information. The Debtors reserve all rights to amend and/or supplement the Schedules and Statements as is necessary or appropriate.

8. **Net Book Value of Assets**. In many instances, current market valuations are not maintained by or readily available to the Debtors. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets. As such, wherever possible, unless otherwise indicated, net book values are presented as of the Reporting Date. When necessary, the Debtors have indicated that the amount of certain assets is "Undetermined." Amounts ultimately realized may vary materially from net book value (or other amounts so ascribed). Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset amounts set forth in the Schedules and Statements.

9. **Currency**. All amounts shown in the Schedules and Statements are in U.S. Dollars.

10. **Payment of Prepetition Claims Pursuant to First Day Orders**. Following the Petition Date, the Bankruptcy Court entered various orders (the "First Day Orders") authorizing, but not directing, the Debtors to, among other things, pay certain prepetition: (i) service fees and charges assessed by the Debtors' banks; (ii) insurance, surety, and letter of credit obligations; (iii) refund program obligations; (iv) employee wages, salaries, and related items (including, employee benefit programs, staffing agency payments, and independent contractor obligations); (v) obligations owed to resident care vendors; (vi) obligations owed to professional corporations; and (vii) taxes and assessments. Where the Schedules and Statements list creditors and set forth the Debtors' scheduled amounts attributable to such claims, such scheduled amounts reflect balances owed as of the Petition Date. The Debtors reserve the right to amend the Schedules and Statements

to reflect payments made pursuant to the First Day Orders that may not be represented in the attached Schedules and Statements.

11. **Other Paid Claims**. To the extent the Debtors reach any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval if necessary. To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

12. **Causes of Action**. Despite making reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third-parties as assets in the Schedules and Statements, including, without limitation, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross-claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") it may have, and neither these Global Notes nor the Schedules and Schedules shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

13. **Setoffs**. The Debtors routinely incur setoffs from payors and suppliers in the ordinary course of business. Such ordinary course setoffs can arise from various items including, but not limited to, billing discrepancies, refund programs, returns, promotional funding, warranties, refunds, certain intercompany transactions, and other disputes between the Debtors and their payors and/or suppliers. These routine setoffs are consistent with ordinary course practice in the Debtors' industry, and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and, as such, are excluded from the Schedules and Statements.

14. **Accounts Receivable**. The accounts receivable information listed on the Schedules includes receivables from the Debtors' residents and third-party payors

and is presented on a gross basis and is segmented into aging groups of over and under 90 days based on calculated apportionment factors. Certain Debtors may show negative accounts receivable amounts due to reconciliation and consolidation of multiple business unit entries under certain Debtors in the company books and records.

15. **Interest Income**. The Statements show both negative and positive amounts with respect to interest income as a result of variations in profitability of certain service lines owned by Debtors, with profits cancelled out in consolidation. Any negative amounts are on account of such intercompany relationships.

16. **Reservation of Rights**. Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to the Chapter 11 Cases, including, but not limited to, the following:

a. Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on their Schedules as to amount, liability, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

b. Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

c. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

d. The listing of a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules accordingly.

e. The listing of a claim on Schedule D as "secured" or on Schedule E/F as "priority unsecured," or the listing a contract or lease on Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection, or otherwise. Moreover, although the Debtors

may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken. Except as provided in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 677] or any order by the Bankruptcy Court that is or becomes final, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

f. In the ordinary course of their business, the Debtors lease property and equipment from certain third-party lessors for use in the daily operation of their business. Any such leases are set forth on Schedule G, and any current amounts due under such leases that were outstanding as of the Petition Date are listed on Schedule E/F. Nothing in the Schedules or Statements is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including, the recharacterization thereof.

g. The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including but not limited to, the right to assert claims objections and/or setoffs with respect to the same.

h. The Debtors' businesses are part of a complex enterprise. Although the Debtors have exercised their reasonable efforts to ensure the accuracy of their Schedules and Statements, they nevertheless may contain errors and omissions. The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases set forth on the Schedules and Statements, and to amend and supplement the Schedules and Statements as necessary.

i. The Debtors further reserve all of their rights, claims, and Causes of Action with respect to the contracts and leases listed on the Schedules and Statements, including, but not limited to, the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

j. The Debtors exercised reasonable efforts to locate and identify guarantees and other secondary liability claims (the "Guarantees") in their secured

financings, debt instruments, and other agreements. However, a review of these agreements, specifically the Debtors' unexpired leases and executory contracts, is ongoing. Where such Guarantees have been identified, they are included in the relevant Schedules and Statements. Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements inadvertently may have been omitted. The Debtors have reflected the obligations under the Guarantees for both the primary obligor and the guarantors with respect to their secured financings and debt instruments on Schedule H. Guarantees with respect to the Debtors' executory contracts and unexpired leases are not included on Schedule H and the Debtors believe that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financing, debt instruments, and similar agreements may exist and, to the extent they do, will be identified upon further review. Thus, the Debtors reserve their rights to amend and supplement the Schedules and Statements to the extent that additional Guarantees are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and reclassify any such contract or claim.

k. Listing a contract or lease on the Schedules and Statements shall not be deemed an admission that such contract is an executory contract, such lease is an unexpired lease, or that either necessarily is a binding, valid, and enforceable contract. The Debtors hereby expressly reserve the right to assert that any contract listed on the Schedules and Statements does not constitute an executory contract within the meaning of Bankruptcy Code section 365, as well as the right to assert that any lease so listed does not constitute an unexpired lease within the meaning of Bankruptcy Code section 365.

l. Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

17. **Totals**. All totals that are included in the Schedules and Statements are for dollar amounts only and exclude items identified as "Undetermined." If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals. Where a claim or other amount is marked as "unliquidated," but the Debtors also report a dollar value, such dollar value may indicate only the known or determined amount of such claim or amount, the balance of which is unliquidated.

18. **Global Notes Control**. In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE SCHEDULES

### Schedules A/B

**Part 1**. As set forth more fully in the Cash Management Motion, the Company uses an integrated cash management system to pay its financial obligations, centrally control and monitor available cash and record accurate financial data. The Debtors' cash management system comprises approximately 725 bank accounts (the "Bank Accounts"). Further details with respect to the cash management system are provided in the Cash Management Motion.

Question 2 reflects petty cash held by the Debtors as of the Petition Date and does not include petty cash held by the Debtors on behalf of their residents.

**Part 2**. The Debtors maintain certain deposits in the conduct of their business operations. These deposits are included in the Schedules for the appropriate legal entity. Types of deposits include, among other things, lease deposits, utility deposits, and a deposit related to the Debtors' Purchasing Card Program as described in the Cash Management Motion, along with "Other Deposits" as booked on the Debtors' financial statements. Certain prepaid or amortized assets are listed in Part 2 in accordance with the Debtors' books and records. The amounts listed in Part 2 do not necessarily reflect assets that the Debtors will be able to collect or realize. These amounts listed in Part 2 include, among other things, prepaid insurance, prepaid wages, prepaid tax impounds, prepaid leases, prepaid licenses, prepaid taxes, and other prepaid items as booked on the Debtors' financial statements.

**Part 3**. The accounts receivable balances in this section exclude intercompany related receivables. Intercompany related receivables are instead shown in the response to Part 11, Question 77.

**Part 4**. Other than (i) an approximately 38% interest in CareerStaff Unlimited, LLC and (ii) interests in the Debtors' joint ventures, the Debtors do not hold any investments.

**Part 7**. The Debtors have used net book value as of June 30, 2025 for reporting its assets. There have been no valuations on any of such assets. The Debtors reserve all of their rights to re-categorize and/or re-characterize such asset holdings to the extent the Debtors determine that such holdings were improperly listed.

**Part 12**. The Debtors have reported the aggregate net intercompany balances between Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, respectively. As a result of the Debtors' historical acquisitions and divestitures, their books and records reflect certain legacy information, which is inapplicable to the Debtors' current operations. Accordingly, to more accurately reflect current assets and liabilities of the Debtors, this legacy information has not been included.

**Schedule D**. Reference to the applicable loan agreements and related documents or other instrument creating the purported lien is necessary for a complete description of the collateral and the nature, extent, and priority of liens. Nothing in the Global Notes or the Schedules and

Statements shall be deemed a modification or interpretation of the terms of such agreements. Except as specifically stated on Schedule D, real property lessors, utility companies, and other parties that may hold security deposits have not been listed on Schedule D.

**Schedules E/F**. The claims listed on Schedules E/F arose and were incurred on various dates. A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, no such dates are included for each claim listed on Schedules E/F. To the best of the Debtors' knowledge, all claims listed on Schedules E/F arose or were incurred before the Petition Date.

**Part 1**. Claims owing to various taxing authorities to which the Debtors potentially may be liable, and which the Debtors have received notice of liability from such taxing authorities, are reported on Part 1. Such claims are split out and scheduled at specific Debtor entities. Certain of such claims, however, may be subject to ongoing audits and/or the claims will be satisfied in the ordinary course during the Chapter 11 Cases pursuant to authority granted to the Debtors in the relevant First Day Orders. Therefore, the Debtors have listed all such claims as "unliquidated" and "disputed" pending final resolution of ongoing audits or other outstanding issues. Inclusion or exclusion of a taxing authority on Part 1 does not mean that such taxing authority has a claim against the Debtors; rather, such taxing authorities are being scheduled out of an abundance of caution, given the numerous jurisdictions and number of Debtors involved in these Chapter 11 Cases. To the extent the amount of tax claims listed on the Debtors' Schedules differs from amounts represented in pleadings filed on the Petition Date in these Chapter 11 Cases, the amounts listed on the Schedules shall govern as prior represented amounts were deemed to relate to non-Debtor entities.

**Part 2**. The liabilities listed on Part 2 include all trade payables, litigation claims, unsecured notes, and governmental agency payables. The trade payable amounts were calculated by taking the sum of all invoices per Debtor and per vendor. The Debtors have exercised their reasonable efforts to list all liabilities on Part 2 of each applicable Debtor's Schedule. As a result of the Debtors' consolidated operations, however, Part 2 for each Debtor should be reviewed for a complete understanding of the unsecured claims against the Debtors.

The Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule E/F of any Debtor. In addition, the Debtors reserve their right to dispute or challenge any priority asserted with respect to any liabilities listed on Schedule E/F. The Debtors have made reasonable efforts to include all unsecured creditors on Part 2 including, but not limited to, trade creditors, landlords, utility companies, consultants, and other service providers. The Debtors, however, believe that there may be instances where creditors have yet to provide invoices for prepetition goods or services.

Part 2 contains information regarding pending litigation involving the Debtors. To the extent that litigation involving a particular Debtor has been identified, such information is included on that Debtor's Schedule E/F. Unknown amounts for potential claims are listed as "Undetermined" and marked as contingent, unliquidated, and disputed in the Schedules.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor. The Debtors reserve all of their rights with respect to any such credits

and/or allowances, including the right to assert objections and/or setoffs or recoupments with respect to same.

The Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain unsecured claims pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date. Certain Debtors may pay additional claims listed on Schedule E/F during the Chapter 11 Cases pursuant to the First Day Orders and other orders of the Bankruptcy Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that have been, or may be, rejected.

**Schedule G**. Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "Agreements"), the Debtors' review process of the Agreements is ongoing and inadvertent errors, omissions, or over-inclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements which may not be set forth in Schedule G. Schedule G may be amended at any time to add any omitted Agreements. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, and other documents, instruments, and agreements which may not be listed on Schedule G.

Executory contracts for short-term service orders that are oral in nature have not been included in Schedule G.

Any and all of the Debtors' rights, claims, and Causes of Action with respect to the Agreements listed on Schedule G are hereby reserved and preserved, and as such, the Debtors hereby reserve all of their rights to (i) dispute the validity, status, or enforceability of any Agreements set forth on Schedule G, (ii) dispute or challenge the characterization of the structure of any transaction, or any document or instrument related to a creditor's claim, including, but not limited to, the Agreements listed on Schedule G, and (iii) amend or supplement such Schedule as necessary.

Certain of the Agreements listed on Schedule G may have been entered into by or on behalf of more than one of the Debtors. Additionally, the specific Debtor obligor(s) to certain of the Agreements could not be specifically ascertained in every circumstance. In such cases, the Debtors have made reasonable efforts to identify the correct Debtor's Schedule G on which to list the Agreement.

**Schedule H**. The Debtors are party to various debt agreements which were executed by multiple Debtors. The guaranty obligations under prepetition secured credit agreements are noted on Schedule H for each individual Debtor. The Debtors may not have identified on Schedule H certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. No claim set forth on the

Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. Due to their voluminous nature, and to avoid unnecessary duplication, the Debtors have not included on Schedule H debts for which more than one Debtor may be liable if such debts were already reflected on Schedule E/F or Schedule G for the respective Debtors subject to such debt. To the extent these Notes include notes specific to Schedules D-G, such Notes also apply to the co-Debtors listed in Schedule H. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

With regard to the debt agreements with White Oak Healthcare Finance, LLC, the Schedules differentiate between the HUD loan and the Non-HUD loan.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE STATEMENTS

**Statement 3**. As described in the Cash Management Motion, the Debtors utilize their integrated, centralized cash management system to collect, concentrate, and disburse funds generated by their operations. The obligations of the Debtors are primarily paid by and through Genesis Administrative Services LLC notwithstanding that certain obligations may be obligations of one or more of the Debtors as described in the Cash Management Motion.

The response to Statement 3 excludes (i) payments made as part of regular and ordinary course payroll disbursements to employees and (ii) disbursements or transfers listed on Statements 4 and 11. Amounts owed to creditors will appear on the Schedules for each Debtor, as applicable.

All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on Statement 11 and are excluded from Statement 3.

To the extent a disbursement was made to pay for multiple invoices on a given day, only one entry has been listed on Statement 3.

**Statement 4**. For purposes of the Schedules and Statements, the Debtors define "insiders" as (i) officers, directors, and anyone in control of a corporate Debtor and their relatives; and (ii) affiliates of the Debtors and insiders of such affiliates. Individuals listed in the Statements as insiders have been included for informational purposes only. The payroll-related amounts shown in response to this question for any salary, bonus, or additional compensation are gross amounts that do not include reductions for amounts including employee tax or benefit withholdings. The Debtors also issue corporate-paid credit cards and reimburse direct business expenses incurred by insiders. Such business expenses also are included in Statement 4. Home addresses for directors, employees, and former employees identified as insiders have not been included in the Statements for privacy reasons.

Pursuant to the Debtors' cash management system, payments made to various parties may be made from a single Debtor on behalf of one or more Debtor entities. The Debtors have only listed each payment on the response to Statement 4 for the Debtor entity that disbursed the payment.

**Statement 7**. Information provided on Statement 7 includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial, or other adjudicative forum. While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to Statement 7. The Debtors reserve all of their rights to amend or supplement their response to Statement 7.

**Statement 11**. Although the services of any entity who provided a Debtor with consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date were provided for the benefit of all the Debtors, the payments for such services were made by Genesis, and are therefore listed on Genesis' response to Statement 11.

Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders. Any payments made by the Powerback Debtor entities to Ankura Consulting Group, LLC do not include amounts related to preparation or filing of the Chapter 11 Cases and as such are not contained in this Statement 11.

**Statement 13**. Within two years of the Petition Date, certain Debtors transferred facility operations to new operators pursuant to various operating transfer agreements. Assets transferred pursuant to these agreements generally included (i) certain assumed contracts; (ii) certain employee, resident, and other records; (iii) all transferable licenses, permits, and other governmental approvals or authorizations; (iv) all patient care contracts and admission agreements with facility residents; (v) resident trust funds and deposits; (vi) any know how or intellectual property rights used or held for use in facility operation and all goodwill associated with the transferred facility; (vii) inventory of supplies including personal protective equipment; (viii) phone, fax, other IT, and therapy equipment; and (ix) all transferable third-party warranties and claims for warranties relating to transferred assets.

**Statement 15**. "Yes" is checked for the currently operating facilities and an estimate of patients and residents as of the Petition Date is provided. "No" is checked for the other debtor entities which are no longer operating. Subject to the Debtors' privacy policy, in the ordinary course of business, the Debtors collect certain resident information and retain such information as long as is necessary for the Debtors to comply with business, tax, regulatory, and legal requirements. Resident records are maintained at each facility and at various off-site storage facilities (listed in response to Statement 20).

**Statement 16**. An abbreviated list of the types of information collected from each facility was provided for each of the currently operating facilities, while "No" was checked for all other entities. Subject to the Debtors' privacy policy, in the ordinary course of business, the Debtors collect certain resident information and retain such information as long as is necessary for the Debtors to comply with business, tax, and legal requirements. Resident records are maintained at each facility, at various off-site storage facilities (listed in response to Statement 20), and electronically.

**Statement 20**. In certain cases, various individuals have access to the off-premises storage facilities. Where applicable, such individuals have been scheduled.

**Statement 26d**. The Debtors have provided financial statements in the ordinary course of their businesses to various customers, financial institutions, creditors, landlords, and other parties within the two years before the Petition Date. Considering the voluminous number of such recipients and the possibility that such information may have been shared with parties without the Debtors' knowledge or consent or subject to confidentiality agreements, the Debtors have not disclosed any parties that may have received such financial statements for the purposes of **Statement 26d**.

**Statement 30**. Any and all known disbursements to "insiders" have been listed in response to Statement 4.

**Statement 31**. Certain Debtor limited liability companies (each, an "LLC") are either disregarded for tax purposes or are partnerships for tax purposes, while other Debtor corporations (and one LLC) are treated as C-Corps for tax purposes. Income generated by a LLC is consolidated at a higher reporting unit level, that reporting unit being a Debtor itself.

*****END OF GLOBAL NOTES*****

****SCHEDULES AND STATEMENTS BEGIN ON THE FOLLOWING PAGE****

**Fill in this information to identify the case:**

Debtor FC-GEN Operations Investment, LLC

United States Bankruptcy Court for the: Northern District of Texas, Dallas Division

Case number (if known) 25-80320

☐ Check if this is an amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/25

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

## Part 1: Income

1. **Gross revenue from business**

☑ None

2. **Non-business revenue**
Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

## Part 2: List Certain Transfers Made Before Filing for Bankruptcy

3. **Certain payments or transfers to creditors within 90 days before filing this case**
List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $8,575. (This amount may be adjusted on 4/1/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $8,575. (This amount may be adjusted on 4/1/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

5. **Repossessions, foreclosures, and returns**
List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

6. **Setoffs**
List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

## Part 3: Legal Actions or Assignments

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity-within 1 year before filing this case.

☐ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| ANNA ROCKETT VS. KLONDIKE MANOR, LLC D/B/A KLONDIKE CENTER; HBR KENTUCKY LLC; GENESIS HEALTHCARE LLC; GENESIS HEALTHCARE, INC.; GHC HOLDINGS II, LLC; 1995 DONNA REIS FAMILY TRUST; FC-GEN OPERATIONS INVESTMENT, LLC; GEN OPERATIONS I, LLC; GEN OPERATIONS II<br>**Case number**<br>19-CI-005400 | GLPL | LOUIS D. BRANDEIS HALL OF JUSTICE<br>600 W. JEFFERSON ST.<br>LOUISVILLE, KY 40202<br><br>AND<br><br>JEFFERSON COUNTY JUDICIAL CENTER<br>700 W. JEFFERSON ST<br>LOUISVILLE, KY 40202<br>PHONE: 502-595-3007 | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| BARBARA ANN KEIPER VS. NESHAMINY MANOR, INC.; NESHAMINY MANOR, INC. D/B/A NESHAMINY MANOR HOME; NESHAMINY MANOR, INC. D/B/A NESHAMINY MANOR LONG TERM CARE FACILITY; BUCKS COUNTY; GENESIS ELDERCARE NETWORK SERVICES, LLC; GENESIS ELDERCARE NETWORK SERVICES,<br>**Case number**<br>2:24-CV-06285 | GLPL | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PA | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| BERNADETTE BROOKS AS ADMINISTRATRIX OF THE ESTATE OF STEVEN PATRICK COLLINS VS. 1526 LOMBARD STREET OPERATIONS LLC D/B/A POWERBACK REHABILITATION 1526 LOMBARD,; GENESIS HEALTHCARE LLC, ;GENESIS HEALTHCARE INC.,; GEN OPERATIONS I LLC,; GEN OPERATIONS II LL<br>**Case number**<br>210502756 | GLPL | COMMON PLEAS | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| CAROL SULLIVAN, THROUGH JENNIFER J. CERNIGLIA, POWER OF ATTORNEY VS. 292 APPLEGARTH ROAD OPERATIONS, LLC D/B/A CRANBURY CENTER; GENESIS NH HOLDINGS, LLC; GENESIS OPERATIONS LLC; GHC HOLDINGS LLC; GENESIS HEALTHCARE LLC; GEN OPERATIONS II,LLC; GEN OPERATIO<br>**Case number**<br>MID-L-004316-21 | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| CATHY GASKILL, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF WILLIAM GASKILL VS. BRANDYWINE HALL,; 800 WEST MINER STREET OPERATIONS LLC, ;GENESIS HEALTHCARE INC.,; GENESIS HEALTHCARE LLC, ;GENESIS PA HOLDINGS LLC, ;GEN OPS I LLC,; GEN OPS II LLC, ;G<br>**Case number**<br>2019-12709-PL | GLPL | COMMON PLEAS | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| CIDNI SIMPSON-WHITE AND LYNNEWOOD WHITE AS CO-ADMINISTRATORS OF THE ESTATE OF CHARLES C. WHITE, JR. VS. COMPLETE CARE AT HARSTON HALL, LLC D/B/A COMPLETE CARE AT HARSTON HALL; 350 HAWS LANE OPERATIONS, LLC D/B/A HARSTON HALL; COMPLETE CARE MANAGEMENT, LLC<br>**Case number**<br>240601396 | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| COLLEEN MANNING, ADMINISTRATRIX OF THE ESTATE OF THOMAS MANNING, DECEASED VS. 1104 WELSH ROAD OPERATIONS LLC D/B/A CHAPEL MANOR,; GENESIS OPERATIONS IV LLC,; FC-GEN OPERATIONS INVESTMENT LLC, ;GEN OPERATIONS I LLC,; GEN OPERATIONS II LLC, ;GEN HEALTHCARE<br>**Case number**<br>000415 | GLPL | COMMON PLEAS | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| DENIS J. O'BRIEN, EXECUTOR OF THE ESTATE OF DONALD J. O'BRIEN VS. 30 WEST AVENUE OPERATIONS, LLC D/B/A WAYNE CENTER,; FC-GEN OPERATIONS INVESTMENT, LLC,; GEN OPERATIONS I, LLC,; GEN OPERATIONS II, LLC,; GENESIS HEALTHCARE, LLC,; SENIOR CARE GENESIS, LLC,<br>**Case number**<br>CV-2018-000334 | GLPL | DELAWARE COUNTY | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| DOLORES JONES BY HER POA DAWN ROBINSON VS. SR-73 AND LAKESIDE AVENUE OPERATIONS, LLC; SR-73 AND LAKESIDE AVENUE OPERATIONS, LLC INDIVIDUALLY AND D/B/A POWERBACK REHABILITATION, ROUTE 73 ; GHC HOLDING, LLC; GENESIS HEALTHCARE, LLC; GENESIS NJ HOLDINGS, LLC<br>**Case number**<br>CAM-L-2851-18 | GLPL | SUPERIOR COURT | ☐ Pending<br>☐ On appeal<br>☑ Concluded |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| DONALD R. LIGHTCAP, SR. & ANNA LIGHTCAP VS. 225 EVERGREEN ROAD OPERATIONS LLC D/B/A SANATOGA CENTER, ;GENESIS HEALTHCARE CORPORATION LLC, ;GENESIS HEALTHCARE LLC, ;GENESIS MANAGEMENT LLC, ;GEN MANAGEMENT LLC, ;GENESIS OPERATIONS I LLC, ;GENESIS OPERATIONS<br>**Case number**<br>2018-28476 | GLPL | MONTGOMERY | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| DONALD R. LIGHTCAP, SR. & ANNA LIGHTCAP VS. 225 EVERGREEN ROAD OPERATIONS LLC D/B/A SANATOGA CENTER, ;GENESIS HEALTHCARE CORPORATION LLC, ;GENESIS HEALTHCARE LLC, ;GENESIS MANAGEMENT LLC, ;GEN MANAGEMENT LLC, ;GENESIS OPERATIONS I LLC, ;GENESIS OPERATIONS<br>**Case number**<br>2018-28476 | GLPL | MONTGOMERY | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| DONALD R. LIGHTCAP, SR. & ANNA LIGHTCAP VS. 225 EVERGREEN ROAD OPERATIONS LLC D/B/A SANATOGA CENTER, ;GENESIS HEALTHCARE CORPORATION LLC, ;GENESIS HEALTHCARE LLC, ;GENESIS MANAGEMENT LLC, ;GEN MANAGEMENT LLC, ;GENESIS OPERATIONS I LLC, ;GENESIS OPERATIONS<br>**Case number**<br>2018-28476 | GLPL | MONTGOMERY | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| ESTATE OF EILEEN BEDDOE BY AND THROUGH NATALIE BEDDOE-WILLIAMS FOR ESTATE OF EILEEN BEDDOE AND ON BEHALF OF ALL HEIRS OF THE ESTATE OF EILEEN BEDDOE, INCLUIDNG, BUT NOT LIITED TO FRANCIS BEDDOE VS. THE WOODLAND CENTER; 1400 WOODLAND OPERATIONS, LLC; GENES<br>**Case number**<br>MID-L-007692-20 | GLPL | MIDDLESEX COUNTY SUPERIOR COURT<br>56 PATERSON STREET<br>NEW BRUNSWICK, NJ 08903<br>PHONE: (732) 645-4300 | ☐ Pending<br>☐ On appeal<br>☑ Concluded |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| ESTATE OF PAUL TYBURSKI AND BARBARA TYBURSKI, INDIVIDUALLY AND AS EXECUTOR FOR THE ESTATE OF PAUL TYBURSKI VS. COURT HOUSE CENTER; 144 MAGNOLIA DRIVE OPERATIONS, LLC; GENESIS HEALTHCARE, INC.; GEN. OPERATIONS I, LLC; GEN. OPERATIONS II, LLC; FC-GEN OPERAT<br>**Case number**<br>CPM-L-000-232-22 | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| ESTATE OF ROBERT ROWAND BY AND THROUGH BONNIE ROWAND FOR ESTATE OF ROBERT ROWAND, AND ON BEHALF OF ALL HEIRS OF ROBERT ROWAND VS. KRESSON VIEW CENTER; VOORHEES SENIOR LIVING; VOORHEES POST ACUTE CARE; 2601 EVESHAM ROAD OPERATIONS, LLC; GENESIS HEALTH CARE<br>**Case number**<br>CAM-L-00315-21 | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| ESTELLA GALLEGOS, DECEASED, BY THE PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH ESTATE, BARRY GREEN, ESQ. VS. 1650 GALLISTEO STREET OPERATIONS LLC D/B/A CASA REAL,; GENESIS OMG OPERATIONS LLC,; GHC HOLDINGS LLC,; GENESIS HEALTHCARE INC.,; GENESIS HEALTHC<br>**Case number**<br>D-101-CV-2021-02240 | GLPL | 1ST DISTRICT | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| ETTA TAYLOR AS ADMINISTRATOR OF THE ESTATE OF ALLEN TAYLOR VS. 350 HAWS LANE OPERATIONS LLC D/B/A HARSTON HALL, ;GENESIS HEALTHCARE LLC, ;GENESIS HEALTHCARE INC., ;GEN OPERATIONS I LLC, ;GEN OPERATIONS II LLC, ;GENESIS ADMINISTRATIVE SERVICES LLC, ;AND FC<br>**Case number**<br>2021-06085-0 | GLPL | COMMON PLEAS | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| EUFEMIA GONZALEZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF IVAN ALBERTO GONZALEZ ROLON VS. 810 SOUTH BROOM STREET OPERATIONS LLC,;FC-GEN OPERATIONS LLC, ;GEN OPERATIONS I,LLC,; GEN OPERATIONS II,LLC,; GENESIS DE HOLDINGS LLC; GENESIS<br>**Case number**<br>N21C-02-083 MAA | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| GARY PELIKAN, AS ADMINISTRATOR OF THE ESTATE OF ALFRED PELIKAN VS. 25 EAST LINDSLEY ROAD OPERATIONS LLC D/B/A ARBOR GLEN CENTER; GENESIS NJ HOLDINGS, LLC; GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; GEN OPERATIONS I, LLC; GEN OPERATIONS II, LLC; GE<br>**Case number**<br>ESX-L-005414-22 | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| HEATHER KUHN AS EXECUTRIX OF THE ESTATE OF RICHARD BENDER VS. 500 EAST PHILADELPHIA AVENUE OPERATIONS LLC D/B/A MIFFLIN CENTER,; GENESIS HEALTHCARE LLC,; GENESIS HEALTHCARE INC., ;GEN OPERATIONS I LLC, ;GEN OPERATIONS II LLC,; GENESIS ADMINISTRATIVE SERVI<br>**Case number** | GLPL | COMMON PLEAS | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| JOANNE C. DREW, AS EXECUTRIX OF THE ESTATE OF WILBUR HARRY DREW, DECEASED VS. GENESIS HEALTHCARE INC., ;3485 DAVISVILLE ROAD OPERATIONS LLC D/B/A POWERBACK REHAB, ;GENESIS HEALTHCARE LLC,; GENESIS PA HOLDINGS LLC, ;GHC HOLDINGS LLC,; FC-GEN OPERATIONS INV<br>**Case number**<br>2020-01492 | GLPL | COMMON PLEAS | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| KAREN WIENCZEK VS. 1700 PINE STREET OPERATIONS, LLC D/B/A NORRITON SQUARE NURSING AND REHABILITATION CENTER; FC-GEN OPERATIONS INVESTMENT, LLC; GEN OPERATIONS II, LLC; GENESIS HEALTHCARE, LLC; GENESIS OPERATIONS, LLC; GENESIS PA HOLDINGS. LLC; GHC HOLDIN<br>**Case number**<br>230901645 | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| LESLIE HANDLEY WILLIAMS, ADMINISTRATRIX OF THE ESTATE OF JANET SUE HANDLEY, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JANET SUE HANDLEY VS. GENESIS HEALTHCARE, LLC; GENESIS HOLDINGS, LLC; SUN HEALTHCARE GROUP, INC.; FC-GEN OPS I; FC-G<br>**Case number**<br>24-C1-01886 | GLPL | HARDIN COUNTY JUSTICE SYSTEM<br>120 E. DIXIE AVE.<br>ELIZABETHTOWN, KY 42701<br>PHONE: 270-766-5000 | ☐ Pending<br>☐ On appeal<br>☑ Concluded |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| LESLIE HANDLEY WILLIAMS, ADMINISTRATRIX OF THE ESTATE OF JANET SUE HANDLEY, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JANET SUE HANDLEY VS. GENESIS HEALTHCARE, LLC; GENESIS HOLDINGS, LLC; SUN HEALTHCARE GROUP, INC.; FC-GEN OPS I; FC-G<br>**Case number**<br>24-C1-01886 | GLPL | HARDIN COUNTY JUSTICE SYSTEM<br>120 E. DIXIE AVE.<br>ELIZABETHTOWN, KY 42701<br>PHONE: 270-766-5000 | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| LESLIE HANDLEY WILLIAMS, ADMINISTRATRIX OF THE ESTATE OF JANET SUE HANDLEY, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JANET SUE HANDLEY VS. GENESIS HEALTHCARE, LLC; GENESIS HOLDINGS, LLC; SUN HEALTHCARE GROUP, INC.; FC-GEN OPS I; FC-G<br>**Case number**<br>24-C1-01886 | GLPL | HARDIN COUNTY JUSTICE SYSTEM<br>120 E. DIXIE AVE.<br>ELIZABETHTOWN, KY 42701<br>PHONE: 270-766-5000 | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| MAREA LEWIS VS. 333 GREEN END AVENUE OPERATIONS,LLC D/B/A GRAND ISLANDER CENTER; GENESIS HEALTHCARE LLC; GENESIS RI HOLDINGS LLC; FC-GEN OPERATIONS INVESTMENT LLC; GEN OPERATIONS 1,LLC, GEN OPERATIONS II, LLC; GENESIS OPERATIONS,LLC; GHC HOLDINGS LLC; SEN<br>**Case number**<br>NC-2017-0236 | GLPL | NEWPORT | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| MARIA GARCIA, AN INDIVIDUAL, BY AND THROUGH HER SUCCESSORS IN INTEREST, JOSE GARCIA, AND OSCAR GARCIA; JOSE GARCIA, AN INDIVIDUAL, AND OSCAR GARCIA, AN INDIVIDUAL VS. ALEXANDRIA CARE CENTER, LLC; SUMMIT CARE, LLC; SUMMIT CARE PARENT, LLC; SKILLED HEALTHCA<br>**Case number**<br>21STCV03943 | GLPL | CENTRAL DISTRICT | ☐ Pending<br>☐ On appeal<br>☑ Concluded |

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| MINA PLANTS, DECEASED, BY THE PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH ESTATE, BARRY GREEN, ESQ. VS. GENESIS HEALTHCARE INC.,; GENESIS HEALTHCARE LLC, ;GENESIS ADMINISTRATIVE SERVICES LLC,; SUMMIT CARE LLC,; ABQ HEIGHTS HEALTHCARE AND REHAB LLC, ; G<br>**Case number**<br>D-101-CV-2022-01591 | GLPL | JUDGE KATHLEEN MCGARRY ELLENWOOD | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| NORMAN W. ROACH, JR. , EXECUTOR O/B/O THE ESTATE OF NORMAN W.ROACH, SR. VS. GENESIS HEALTHCARE, LLC; GENESIS HEALTHCARE, INC.; GEN. OPERATIONS I,LLC; GEN OPERATIONS II, LLC; FC-GEN OPERATIONS HOLDINGS, LLC; GENESIS OPERATIONS LLC; GENESIS ADMINISTRATIVE S<br>**Case number**<br>CPM-L-69-20 | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| STANLEY IANIERI, VS. POWERBACK REHABILITATION CENTER; POWERBACK REHABILITATION A/K/A POWERBACK REHABILITATION CENTER CITY; 1526 LOMBARD STREET SNF OPERATIONS LLC; FC-GEN ACQUISITION HOLDING<br>**Case number**<br>240602674 | GLPL | | ☐ Pending<br>☐ On appeal<br>☑ Concluded |

8. **Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

**Part 4: Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

**Part 5: Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

**Part 6: Certain Payments or Transfers**

11. **Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

12. **Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

13. **Transfers not already listed on this statement**
List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.
Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

**Part 7: Previous Locations**

14. **Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

**Part 8: Health Care Bankruptcies**

15. **Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for :
— diagnosing or treating injury, deformity, or disease, or
— providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

**Part 9: Personal Identifiable Information**

16. **Does the debtor collect and retain personally identifiable information of customers?**

☑ No.
☐ Yes. State the nature of the information collected and retained.

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

**Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name , or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

19. **Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

**Part 11: Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

**Part 12: Details About Environmental Information**

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

**Part 13: Details About the Debtor's Business or Connections to Any Business**

25. **Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| GEN OPERATIONS I, LLC<br>101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | DEBTOR AFFILIATE | 27-3237090<br>**Date business existed**<br>From: 8/9/2010 To: CURRENT |

26. **Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| CYNTHIA MANINGAS<br>101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | From 9/2/1997 To CURRENT |
| JAMES JACKSON<br>101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | From 12/23/1996 To CURRENT |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| GRANT THORNTON, LLP<br>TWO COMMERCE SQUARE<br>2001 MARKET STREET<br>SUITE 800<br>PHILADELPHIA, PA 19103 | From 2022 To CURRENT |

| Name and address | Dates of service |
|---|---|

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed .

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| CYNTHIA MANINGAS<br>101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | |
| JAMES JACKSON<br>101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

SEE GLOBAL NOTE

27. **Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ None

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

☐ None

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| JONATHAN KIRSCHNER | 101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | PRESIDENT AND CHIEF FINANCIAL OFFICER | |
| LAURA BRIDGEFORD | 101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | TREASURER | |
| MICHAEL BERG | 101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | SECRETARY | |
| SUN HEALTHCARE GROUP, INC. | 101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | CONTROLLING SHAREHOLDER | 66.1% |
| SUNDANCE REHABILITATION HOLDCO, INC. | 101 EAST STATE STREET<br>KENNETT SQUARE, PA 19348 | SHAREHOLDER | 5.1% |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ None

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ None

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ None

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None

**Part 14: Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 09/10/2025.

✘ /s/ Russell Perry
Signature of individual signing on behalf of the debtor

Russell Perry
Printed Name

Co-Chief Restructuring Officer
Position or relationship to debtor

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☑ No
☐ Yes